# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JASON D. WILLIAMS, | ) | 1:08-CV-1636 GSA |
| | ) | |
| Plaintiff, | ) ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

## **BACKGROUND**

Plaintiff Jason D. Williams ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On November 06, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes. (Doc. 10.)

1

# **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application on or about May 22, 2006, alleging disability since July 14, 2002, due to personality disorders and hypertension. AR 56, 104. His application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 56-63, 64-66. ALJ Christopher Larsen held a hearing on January 28, 2008, and issued an order denying benefits on April 12, 2008. AR 10-18, 21-55. On September 26, 2008, the Appeals Council denied review. AR 1-3.

Hearing Testimony

ALJ Larsen held a hearing on January 28, 2008, in Fresno, California. Plaintiff appeared and testified. He was represented by Melissa Proudian. Vocational Expert ("VE") Judith Najarian also testified. AR 21-55.

Plaintiff testified that he is thirty-seven years old, born October 6, 1970. AR 26. He is approximately 5'7" and weighs about two hundred pounds. He is divorced and has no children. AR 27.

Plaintiff does not hold a valid California driver's license; he did not renew his license because he was incarcerated at the time of renewal. AR 27. However, Plaintiff testified he could get his license back since there are no suspensions. AR 28. He is currently able to get around by taking the city bus. AR 28.

Plaintiff's highest grade completed in high school was the eleventh grade. AR. 28. In 1991, he completed some units at a college and subsequently earned an equivalent of a high school diploma. AR 28. Plaintiff has not received any vocational training, but can read and write in English. AR 29.

During the last fifteen years, Plaintiff's work history has been sparse. He last worked in 2006 at the fairgrounds where he parked cars, however, he only held the job for one week. AR 29. While incarcerated in 2005, he worked in "the culinary" where he served on the line for approximately ninety days. AR 32. Plaintiff testified that he was taken off the line because at

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

times he was unable to work due to his "eye" and his "dizziness." AR 32. Plaintiff had difficulty dealing with supervisors and coworkers; he sat away from people at lunch and did not speak to half the people who worked on the line. AR 33. In 1992, Plaintiff worked as a prep cook for a restaurant for approximately four months. AR 30. While employed as a prep cook, Plaintiff testified that the heaviest weight he would have lifted was approximately twenty pounds. AR 30. Plaintiff also testified that he was unable to cope with the authority of the job and felt that he was "a little bit slow" and became frustrated when he was unable to keep up with the pace of the job. AR 30. Plaintiff testified that when gets frustrated, he either hurts himself or others. AR 30. He eventually was let go because he was unable to keep up with the pace. AR 30.

The last time Plaintiff was incarcerated was July 17th, 2007 after he tested positive for methamphetamine while on parole. AR 31. He testified that he was not addicted to methamphetamine and did not use it on a regular basis. AR 31. However, he said that he used methamphetamine on those days he knew he would be taking a urine test because he wanted to go back to prison. AR 31. He further testified that he could not "make it out here in society" and that he "could cope better in prison." AR 31. While incarcerated, Plaintiff believed he was able to get along with the other prisoners, however, he testified that he knew he was not "going to deal with all of them." AR 31. Plaintiff, under the prison's mental health care, was placed in general population in a "triple CMS." AR 31-32. Plaintiff did not have a job while he was incarcerated in 2007. AR 32.

Plaintiff does not believe he could work an eight hour, five day a week job because he suffers from bipolar disorder and schizophrenia; he claims to hear voices and believes he is capable of acting out and hurting people. AR 33. Plaintiff testified that when he heard voices, he would not act out on them as long as he inflicted pain on himself. AR 34. He testified that he would usually either "hit his fist" or apply electricity to his neck. AR 34. He said the last time he applied electric current to his neck was in the summer before he was incarcerated prior to July of 2007. AR 34.

Plaintiff takes Seroquel twice a day, morning and night. AR 44. He also takes Paxil which alleviates his anxiety. AR 44. On Seroquel, Plaintiff is still able to hear voices, but does

not act out on them due to a decrease in his anxiety level. AR 36. Plaintiff claims the voices continue to affect his ability to concentrate, despite taking Seroquel. AR 36. When asked about the longest time period he was able to watch television at one time before having to take a break, Plaintiff answered approximately three hours straight. AR 36. However, he was unable to state how long he could watch television and still remember what he saw. AR 36.

Plaintiff testified that he does not read for pleasure or read the newspaper and does not see friends on a regular basis. AR 38. He spends his typical day either sitting around the house or every now and then lifting weights. AR 38. Plaintiff testified that he spends approximately two hours working out at a time and that he is able to concentrate and focus his attention on what he is doing. AR 38.

Plaintiff testified that he has good days and bad days. AR 39. On good days, he sleeps approximately five hours at night. AR 39. Also on good days, he gets up in the morning and walks approximately three to four miles. AR 39. Yet, when questioned about how many good days he has out of a seven-day week, Plaintiff responded that he has maybe eight hours, depending on his frame of mind. AR 40.

With regard to his frame of mind, Plaintiff testified that he can be either nice at times or extremely violent. AR 41. Plaintiff pointed out that he has committed a few violent acts while he was incarcerated. AR 33. He described an incident in 2007 where he hit his fist against the wall prompting him to be "kicked out" of the prison drug program. AR 33-34. He also testified that he has hurt himself as well as family members, yet Plaintiff has had no legal troubles in the past two years as a result of these violent acts. AR 41. More particularly, Plaintiff described an incident where he became upset with his uncle for taking a different freeway while driving to attend the hearing before the ALJ. AR 42. However, even though Plaintiff became upset, he did not act out in violence because his uncle was giving him a ride to the hearing. AR 42. Plaintiff also explained when he becomes angry with someone, he thinks about committing violent acts against that person and it interferes with his ability to concentrate and focus. AR 42-43. However, Plaintiff testified that if he takes his Seroquel on time, these feelings diminish and within approximately two hours he is able to hold back his actions. AR 43.

4

Plaintiff testified that he has suicidal thoughts. AR 44. The last time he had suicidal thoughts was in August of 2007, where he was placed in a "safety bed." AR 45. The medication only keeps his suicidal thoughts under control "a little bit", however, the medication does take the "edge off." AR 45. When asked about why he felt that he could not do a job eight hours a day when he is on medication, Plaintiff replied that the medication makes him tired and he has to lie down and rest three to four hours a day. AR 45-46. More particularly, when asked if he took the medication at 8:00 a.m., how long he would need to lay down, Plaintiff answered until 10:00 a.m. to 12:00 p.m. AR 47. After laying down, Plaintiff testified that he would feel "normal" for the next three to four hours. AR 48.

Plaintiff has a macular hole in his left eye, however, it only affects his peripheral vision. AR 48. He has had surgery on his eye, but claims it has not helped. AR 48. No further surgeries are planned. AR 48-49. Plaintiff wears prescription glasses just for his right eye. AR 49. He explains his left eye vision is comparable to "watching television that is censored." AR 49. He suffers from headaches all the time and treats the pain with aspirin, however, it does not take the pain completely way. AR 49.

VE Najarian also testified at the hearing. The ALJ stated that he was under the impression that the prep cook work was so far back that it did not count, but asked for the sake of completeness what skill and exertional level were associated with that position. AR. 51.

The VE indicated that Plaintiff's work as a "cook helper" is classified as medium in the Dictionary of Occupational Titles ("DOT") and a two. AR 51. The VE was asked to assume a worker of Plaintiff's age, education, and work experience, subject to two limitations: one is that he can understand, remember and carry out simple repetitive tasks, and the other is that he can tolerate only limited contact with supervisors and the general public. VE Najarian was asked if such a worker with these two limitations could work as a prep cook. AR 51. The VE advised that such a worker would not be able to perform the work; while prep cooks are not in contact with the public, they still work in close proximity with each other in the kitchen. AR 51. VE Najarian also advised that such a worker could perform other jobs in the regional or national economy, such as

equipment cleaners, hand laborers, or machine packers. AR 52. There are 25,369, 55,880, 5,011 of those jobs, respectively, in California. AR 52.

When asked by Plaintiff's attorney if the results would be different if the first hypothetical was changed to an individual who is not able to tolerate any contact with the general public or supervisors, the VE responded by stating that there would not be any jobs. AR 53.

In the second hypothetical, the VE was asked about a worker of Plaintiff's age, education, and work experience, subject to a third limitation that he cannot complete an eight-hour workday without interruption from psychologically based symptoms. AR 52. VE Najarian testified that there are no jobs for that worker in the regional or national economy. AR 52-53.

Medical Record

The record is summarized here with particular regard to the reports of Greg Hirokawa, Ph.D., and A. R. Garcia, M.D. Nonetheless, the record as a whole was reviewed and will be specifically referenced where appropriate.

On July 7, 2006, Greg Hirokawa, Ph.D., a consultive psychologist, conducted a comprehensive psychiatric evaluation of Plaintiff. AR 172-178. Plaintiff's chief complaints included feeling depressed and anxious, having panic attacks, suffering from anger problems, prone to upset and violence, difficulty being around others, mood swings, poor concentration and worry. AR 172.

Plaintiff provided a past medical history of headaches, dizziness, and visual impairment in his left eye. AR. 173. Plaintiff denied suffering a major head injury which required hospitalization. AR 173. He also provided a past psychiatric history where he denied being in a psychiatric hospital and denied any previous suicidal attempts. AR 173. Plaintiff reported that he also has a history of violence and getting easily agitated. AR 172. He indicated that he was not receiving any mental health treatment. AR 173. Plaintiff revealed that he has a heavy alcohol and drug use history. AR 172. He reported previously participating in a drug and alcohol treatment program. AR 173.

The mental status examination showed good hygiene and presentable appearance. AR 174. Even though Plaintiff's behavior was cooperative, he was irritable throughout the

evaluation. AR 174. His psychomotor functioning was within normal limits as well as his stream of mental activity. AR 174. His association of thought was within normal limits and his articulation was clear, velocity and volume were normal, and quantity of speech was appropriate. AR 174. Plaintiff's content of thought appeared appropriate and he denied auditory or visual hallucinations. AR 174. There was also no evidence of delusional thinking; his reality contact was intact and he did not appear to be responding to any internal stimuli during the interview. AR 174. Plaintiff's mood was depressed, however, the severity was within the mild range. AR 174, 176. His affect was appropriate to content and he denied any current suicidal ideation. AR 174, 176. His intellectual functioning appeared to be within the average range. AR 175. Plaintiff's recent and past memory were intact and his concentration for conversation was adequate. AR 175.

Dr. Hirokawa assessed a Global Assessment of Functioning ("GAF")[3] of 62. AR 176. Dr. Hirokawa's diagnoses included: depressive disorder, not otherwise specified; panic disorder without agoraphobia; intermittent explosive disorder; polysubstance dependence in remission; and antisocial personality disorder. AR 176. Dr. Hirokawa indicated that Plaintiff has a severe personality disorder which consists of poor interpersonal skills, paranoia, sensitivity to criticism, misinterpreting others and anger problems. AR 177.

Dr. Hirokawa found that Plaintiff has a "good" ability in the following areas: remember locations and work-like procedures; understand and remember short and simple instructions; remember detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance as well be punctual within customary tolerances; complete a normal workday/workweek without interruptions from psychologically based symptoms and perform at a consistent pace; withstand the stress of a routine workday and deal with various changes in the work setting. AR 177-178. Dr. Hirokawa reported that Plaintiff has a "fair" ability in the following areas: instructions from supervisors and

---

[3] A GAF score is a generalized description of the claimant's level of psychological symptoms. *See* DSM-IV at 32 (4th Ed. 2000) (DSM IV). The Commissioner has determined the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings." 65 Fed.Reg. 50,746, 50,765 (Aug. 21, 2000).

7

responding appropriately to criticism; functioning independently and sustaining an ordinary routine without special supervision; and social judgment and awareness of socially appropriate behavior. AR 177. Dr. Hirokawa noted that Plaintiff has a "poor" ability to interact with coworkers and the general public. AR 177. He further indicated that the likelihood of Plaintiff emotionally deteriorating in a work environment is "moderate." AR 178.

On August 22, 2006, state agency physician A. R. Garcia, M.D. prepared a Residual Functional Capacity Assessment regarding Plaintiff. AR 184-197. Based on the doctor's review of the medical record, he opined that Plaintiff suffered from a personality disorder. AR 184, 189. Dr. Garcia indicated that Plaintiff's mental status was intact. AR 194. He also indicated that Plaintiff has some difficulty interacting with others, yet he was in a current relationship. AR 194. Dr. Garcia indicated that Plaintiff would have "moderate" limitations regarding the ability to: understand and remember as well as carry out detailed instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; and interact appropriately with the general public. AR 194-195. Dr. Garcia further stated that Plaintiff is capable of maintaining attention sufficient to perform work and is able to sustain work best in a small group or alone in work which requires minimal supervision. AR 197.

ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 22, 2006, and had the severe impairments of antisocial personality disorder, depressive disorder, panic disorder without agoraphobia, intermittent explosive disorder, and polysubstance dependence. AR 12.

Based on his review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to work at all exertional levels, but can tolerate only limited contact with supervisors and the general public, and can understand, remember, and carry out simple, routine repetitive tasks. AR 15. Plaintiff has at least a high school education and can communicate in English and the transferability of job skills is not an issue because Plaintiff has no past relevant work. AR 17.

1    Given Plaintiff's age, education, work experience, and RFC, the ALJ found the Plaintiff
2 could perform jobs that exist in significant numbers in the national economy. AR 17. Thus, the
3 ALJ determined that Plaintiff has not been under a disability. AR 18.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The

burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work history, yet has the RFC to work at all exertional levels, but can tolerate only limited contact with supervisors and the general public, and can understand, remember , and carry out simple, routine repetitive tasks; and (5) has the RFC to perform jobs that exist in significant numbers in the national economy. AR 12-18.

Here, Plaintiff argues that the ALJ failed to properly evaluate the opinions of the examining psychologist as well as the state agency physician. Plaintiff contends that this Court should award benefits, or in the alternative, reverse and remand this matter for further administrative proceedings.

## **DISCUSSION**

### *Examining Psychologist's Opinion*

Plaintiff contends the ALJ failed to reconcile the differences between to the two opinions of Drs. Hirokawa and Garcia. (Doc. 13 at 7-9.) More particularly, Plaintiff contends that Dr. Hirokawa's opinion that he had a "moderate" likelihood of emotionally deteriorating in a work environment is inconsistent with Dr. Garcia's opinion because Dr. Garcia did not set forth this work-related limitation in his report. (Doc. 13 at 7.) Plaintiff argues that the ALJ improperly rejected Dr. Hirokawa's opinion because the ALJ failed to articulate specific and legitimate reasons based on substantial evidence in the record. (Doc. 18 at 2.) However, the ALJ rejected this part of Dr. Hirokawa's opinion because the ALJ determined that Plaintiff was not credible

and Dr. Hirokawa relied primarily on Plaintiff's statements when he made the determination about this work-related limitation. AR 16.

An ALJ must provide "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995) (citations omitted). The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)) Also, as a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d at 1043.

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

Plaintiff argues that the ALJ improperly rejected Dr. Hirokawa's opinion that Plaintiff has "moderate" likelihood of emotionally deteriorating in a work environment on the basis that Dr. Hirokawa relied primarily on Plaintiff's own representations, which the ALJ found not credible. (Doc. 13 at 8.) Plaintiff asserts that the ALJ's reasoning is speculative because Dr. Hirokawa's report did not specifically state that he based his opinion on Plaintiff's representations. (Doc. 13

11

at 8.) However, a review of the record demonstrates that the ALJ gave specific and legitimate reasons for rejecting this portion of Dr. Hirokawa's opinion. The ALJ stated the following:

> The psychological consultative examiner stated Mr. Williams had a moderate likelihood of emotionally deteriorating in a work environment. But neither of the state agency psychiatric consultants assigned any additional limitations to Mr. Williams related to this statement by the consultative examiner. Mr. Williams is *not credible*, and *his statements to the psychological consultative examiner were the primary basis upon which the consultative examiner made his determinations about this work-related limitation.* Considering the record as a whole, I find restricting Mr. Williams to limited contact with the public while working is sufficient to accommodate any actual limitation Mr. Williams may have related to the possibility of his emotional deterioration in a work environment.

AR 16-17 (emphasis added).

Here, the ALJ properly concluded that Dr. Hirokawa primarily relied on Plaintiff's own representations. AR 16. In a review of Dr. Hirokawa's report following examination, the statement that Plaintiff had a "moderate" likelihood of deteriorating in the workplace does not appear to be supported by the specific examination findings set forth in the doctor's report. AR 174-178. Rather, it appears to refer to the information provided to the doctor by the Plaintiff. *Magallanes v. Bowen,* 881 F.2d at 751 (a lack of supporting findings is a valid reason for rejecting a treating physician's opinion). Plaintiff's mental status examination revealed that his psychomotor functioning was within normal limits and his behavior was cooperative, albeit irritable throughout the evaluation. AR 174. Plaintiff's stream of mental activity was within normal limits, thought content was appropriate, and there was no evidence of delusional thinking or auditory or visual hallucinations. AR 174. Plaintiff's reality contact was also intact and he did not appear to be responding to internal stimuli. AR 174. Although Plaintiff's mood was depressed, his affect was appropriate to content, his intellectual functioning appeared to be within the average range, his memory appeared intact and he had an appropriate fund of knowledge. AR 174-175. Moreover, the ALJ indicated that Plaintiff experienced no episodes of decompensation. AR 14. Finally, based on the fact that Plaintiff did not dispute the ALJ's credibility finding and the fact that Dr. Hirokawa did not review any medical records, the ALJ's conclusion that Dr. Hirokawa's opinion was primarily derived from Plaintiff's own representations was proper and not based on speculation. AR 16-17, 172; *Macri v. Chater,* 93 F.3d 540, 544 (9th Cir. 1996) (ALJ may draw inferences that logically flow from the evidence). Thus, it was appropriate for the ALJ

to reject this portion of Dr. Hirokawa's opinion on the basis that the doctor relied on Plaintiff's representations when the Plaintiff was found undisputedly not credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008); *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989). As such, the ALJ properly articulated specific and legitimate reasons for the rejection of the doctor's opinion.

Plaintiff also argues that the ALJ failed to articulate specific and legitimate reasons for rejecting Dr. Hirokawa's opinion that Plaintiff has a "fair" ability in functioning independently and sustaining an ordinary routine without special supervision. (Doc. 13 at 9.) However, a close review of the record demonstrates this contention fails because the ALJ did not reject this portion of Dr. Hirokawa's opinion. *See* AR 16. Dr. Garcia's opinion that Plaintiff would experience a "moderate" limitation in this area is not inconsistent with Dr. Hirokawa's opinion as a whole. AR 172-177, 195. Thus, Plaintiff's argument that the VE's testimony lacks evidentiary value because this limitation was not presented to the VE also fails as the two doctors' opinions are not inconsistent with each other. *Bayliss v. Barnhart,* 427 F.3d 1211, 1217-1218 (9th Cir. 2005).

***Nonexamining State Agency Physician's Opinion***

Plaintiff argues that the ALJ improperly rejected Dr. Garcia's opinion that Plaintiff has a "moderate" limitation in sustaining an ordinary routine without special supervision. (Doc. 13 at 10.) Plaintiff asserts that the ALJ's rejection of Dr. Garcia's opinion, the failure to explain how much weight is afforded to this limitation, and the fact that the limitation was not presented to the VE was a reversible error. (Doc. 13 at 10.) Here, a close review of the record demonstrates this argument lacks merit because the ALJ did not reject this portion of Dr. Garcia's opinion. AR 16. Since this portion of Dr. Garcia's opinion was not rejected, Plaintiff's argument that the limitation was not presented to the VE also lacks merit. The ALJ correctly posed a hypothetical to the VE which contained the appropriate limitations. AR 51-52. *Bayliss v. Barnhart,* 427 F.3d at 1217-1218. In sum, the ALJ's determinations were proper.

//
//
//
//

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Jason D. Williams.

IT IS SO ORDERED.

Dated: **February 25, 2010**          **/s/ Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE